**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**(WESTERN DIVISION)**

| | |
|---|---|
| MARY ALBAN, Individually and on Behalf of Herself and All Others Similarly Situated, | Case No.:  1:16-cv-726 |
| Plaintiff, | |
| v. | COMPLAINT WITH JURY DEMAND ENDORSED HEREON |
| MERCY HEALTH, THE MERCY HEALTH PARTNERS RETIREMENT PLAN COMMITTEE, AND JOHN DOES 1-20, | |
| Defendants, | |

Plaintiff Mary Alban ("Plaintiff"), individually and on behalf of all those similarly situated, as well as on behalf of the Mercy Health Partner of Greater Cincinnati Retirement Plan (the "Plan" or the "Mercy Health Retirement Plan"), as defined herein, by and through her attorneys, hereby allege as follows:

**<u>NATURE OF THE ACTION</u>**

1.     This class action is brought on behalf of participants and beneficiaries of defined benefit pension plan maintained by Mercy Health ("Mercy Health" or the "Company") and operated as or claimed to be a "Church Plan" under the Employee Retirement Income Security Act of 1974 ("ERISA").  Mercy Health is violating numerous provisions of ERISA — including underfunding the Plan by over $ 233,943 million[1] — while erroneously claiming that the Plan is exempt from

---

[1] *See* Consolidated Financial Statement and Supplementary Information, Mercy Health Years Ended December 31, 2015 and 2014 at:

ERISA's protections because it is a "Church Plan". But the Plan does not meet the definition of a Church Plan because Mercy Health plainly is not a church or a convention or association of churches and because the Plan was not established by a church or convention or association of churches. That should be the end of the inquiry under ERISA, resulting in a clear finding that the Plan is not a Church Plan.

2. Even if, however, these facts were different, and the Plan could otherwise qualify for Church Plan status, it would be specifically excluded from such status because substantially all of the participants in the Plan are not employed by either the Catholic Church or an organization that is controlled by or associated with the Catholic Church, within the meaning of ERISA. Mercy Health is not controlled by the Catholic Church and, despite its name, is not "associated with" the Catholic Church within the meaning of ERISA because it does not share common religious bonds and convictions with the Catholic Church.

3. For example, upon information and belief, Mercy Health is not owned or operated by the Catholic Church and does not receive funding from the Catholic Church. It is long since removed from the days when nuns once ran the hospitals, spread their gospel, and faithfully stewarded retirement assets for their employees. Mercy Health deliberately chooses to distance itself from, or even abrogate, many religious convictions of the Catholic Church, when it is in its economic interest to do so, such as when it hires employees, performs or authorizes medical procedures forbidden by the Catholic Church, and encourages divergent and contrary spiritual support to its clients.

4. Upon information and belief, with respect to recruiting and hiring its employees —

http://www.mercy.com/corporate/Reports/Recent%20Fiscal%20Year%20Reports/AFile_001_Audited_Financial_Statements.pdf

those who then become Plan participants — Mercy Health informs prospective employees that Catholic faith is not a factor in the hiring process. Like many employers, Mercy Health promotes itself by insisting that it hires regardless of whether there are any common religious convictions. In other words, Mercy Health hires retirement Plan participants, in part, by assuring them that their religiosity, or absence thereof, is not relevant.

5. Hospitals and medical care facilities inside of Mercy Health's system also perform elective, contraceptive sterilization procedures on patients despite the fact that the Catholic Church officially denounces such procedures as intrinsically immoral, evil, and illegal. *See* http://www.healthcarefinancenews.com/news/mercy-medical-center-facing-lawsuit-will-allow-sterilization-california-woman.

6. With respect to its offering of spiritual support to its clients/patients, Mercy Health specifically chooses not to promote the Catholic faith. Mercy Health does not just remain neutral on this issue and allows patients to do as they please with respect to their religiosity, or lack thereof.

7. Mercy Health network has grown, in large part, through the acquisition of hospitals and ancillary care facilities that had no claimed ties to religion. Indeed, Mercy Health's current growth model specifically targets the acquisition of additional healthcare facilities that have no claimed ties to religion. These facilities do not purport, and have never purported, to adhere to the moral and doctrinal teaching of the Catholic Church, and Mercy Health continues to operate these facilities in such fashion.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

9.     This Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  Defendants are neither residents of the United States nor subject to service in the United States, and the Court therefore has personal jurisdiction over them.  The Court also has personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they would all be subject to a court of general jurisdiction in Ohio as a result of Mercy Health being headquartered in, transacting business in, and/or having significant contacts with this District.

10.     Venue is proper in this district pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District; some or all of the violations of ERISA took place in this District; and/or Mercy Health may be found in this District.

11.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Mercy Health systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District. Venue is also proper in this District pursuant to Local Rule 82.1 because Mercy Health's headquarters is in Cincinnati, Ohio.

## THE PARTIES

### Plaintiff

12.     *Plaintiff Mary Alban* is a citizen and resident of Cincinnati, Ohio. Plaintiff was employed by Mercy Health.  Plaintiff Alban was participant in the Plan.

### Defendants

13.     *Defendant Mercy Health* is a 501(c)(3) non-profit corporation organized under the laws of Ohio.  Defendant is headquartered in Cincinnati, Ohio 45202.  Mercy Health purports to be a Catholic health organization, supervising market delivery systems consisting of hospitals, physician

clinics, and other organizations providing health-related services.

14.     ***Defendant Mercy Health Retirement Plan Committee*** (the "Retirement Committee") is an unincorporated association, which, upon information and belief, is the Plan Administrator and/or named fiduciary.

15.     ***Defendants John Does 1-20*** are the individual members of the Retirement Committee and members of any other committee(s) which administer the Plan. The identity of the members of the Retirement Committee, and any other committee(s) which was or were responsible for carrying out the provisions of the Plan, is currently not known. Upon information and belief, Defendants John Does 1-20 are senior executive officers of the Company who knew or should have known the facts alleged herein. The Retirement Committee and John Does 1-20 are hereafter collectively referred to as the "Committee Defendants."

## BACKGROUND

### Church Plan Exemption

16.     Under ERISA, the non-electing church plan is exempt from meeting various requirements in order to be a qualified plan under Code section 401(a) and a tax-exempt trust under Code section 501(a), unless the plan sponsor elects otherwise.

17.     Under Code section 414(e) added by ERISA, a church plan was defined as a plan established and maintained by a church or a convention or association of churches that is exempt from tax under Code section 501(a).

18.     If a plan met this definition, it was permanently exempt from meeting certain requirements which other retirement plans had to satisfy in order to be qualified under Code section 401(a).

19.     In addition to the definition and the general rule, Code section 414(e)(3)(A) provided

5

a special temporary rule for plans which were maintained for the benefit of employees of certain agencies of churches. Under this rule, such plans were treated as church plans until plan years beginning after December 31, 1982, if the plan was in existence on January 1, 1974, and it was established and maintained by a church for the employees of the church and the employees of one or more agencies of the church. Each of the agencies participating in the plan had to be tax-exempt under Code section 501(a).

20.     The major advantage derived by a plan that qualifies to be a church plan is that it allows the plan sponsor a choice whether the plan sponsor to comply with the participation, vesting and funding requirements imposed by Title II of ERISA. *See also* Code sections 410(c)(1)(B), 411(e)(1)(B) and 412(h)(4). As well as being exempt from certain provisions of the Code, church plans are exempt from Titles I and IV of ERISA.

21.     If the plan sponsor chooses not to comply with ERISA, the plan must satisfy the pre-ERISA coverage and participation, vesting and funding requirements that were in effect on September 1, 1974, in order to be a qualified plan. These plans are known as "non-electing church plans." Most church plans are non-electing church plans. In addition to the exemptions just mentioned, the last paragraph of Code section 401(a) exempts plans to which Code section 411 is not applicable from having to comply with certain requirements of Code section 401(a), among them:

- Joint and Survivor Annuities, § 401(a)(11);
- Mergers and Transfers of Assets and Liabilities, § 401(a)(12);
- Assignment or Alienation of Benefits exclusive of QDRO's[2], § 401(a)(13);

---

[2]     Note that an unusual situation exists with regard to qualified domestic relations order's ("QDRO") in church plans. If the plan provides that benefits are wholly unassignable, and such a provision is enforceable under state law, it is possible that the plan would be prohibited from paying plan assets to anyone other than the plan participant. In contrast, in plans subject to ERISA and Code section 401(a)(13) such a state law would be preempted and the plan would be required to contain language permitting the assigning of benefits pursuant to QDRO's.

- Commencement of Benefit Requirements, § 401(a)(14);
- Reductions in Benefits due to Social Security Increases, § 401(a)(15); and
- Forfeiture of Mandatory Contributions, § 401(a)(19).

22.     Non-electing church plans are also exempted from the prohibited transaction provisions of Code section 4975 pursuant to Code section 4975(g).

23.     Although a non-electing church plan is exempt from complying with those requirements listed above, it still must comply with the other requirements of Code section 401(a) in order to qualify under Code section 401(a).

24.     Under Title I of ERISA, church plans are again given an exemption from meeting certain of the requirements imposed by Title I.  Section 4(b) of ERISA states that Title I does not apply to any employee benefit plan if the plan is a church plan which has not elected under Code section 410(d) not to be treated as a church plan.

25.     The definition of a church plan in § 3(33) of Title I of ERISA is a mirror image of the definition of church plan set out in Code section 414(e) as amended by ERISA.

**<u>Retirement Plans That Do Not Qualify As A Church Plan</u>**

26.     Prior to the passage of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPA"), a plan could only be a church plan within the meaning of Code section 414(e) if it covered employees of the church or church agencies.

27.     Under Code section 414(e)(2) prior to final regulations, a plan could not qualify as a church plan if it was established and maintained primarily for employees of a church who were employed in connection with one or more unrelated trades or businesses (within the meaning of Code section 513).

28.     One of the principal areas the regulations focused upon dealt with unrelated businesses. Under Code section 414(e), a plan does not qualify as a church plan unless it is

established and maintained primarily for the benefit of employees who are not engaged in an unrelated trade or business. A plan will satisfy this requirement under Regulation §1.414(e)-1(b)(2) if, on the date the plan is established, the number of employees employed in connection with the unrelated trades or businesses eligible to participate is less than 50% of the total number of employees eligible to participate. This rule pertains to the year in which the plan is established.

29. A plan is considered maintained primarily for employees of the church, for plan years after September 2, 1974, if in four of its last five plan years (i) less than 50% of the plan participants consist of, and in the same year (ii) less than 50% of the total compensation paid by the employer during the plan year to plan participants is paid to, employees employed in an unrelated trade or business.

30. Under Code section 414(e)(2) prior to its final regulations, a plan could not qualify as a church plan if it was maintained by more than one employer, and if one or more of the employers was not a church which is tax-exempt under Code section 501.

## SUBSTANTIVE ALLEGATIONS

### Mercy Health

31. Mercy Health (formerly Catholic Health Partners) purports to be a Catholic health organization, supervising market delivery systems consisting of hospitals, physician clinics, and other organizations providing health-related services.

32. Mercy Health employs 32,000 employees and is the fourth largest employer in Ohio.

33. Mercy Health renders services to patients under contractual arrangements with the Medicare and Medicaid programs. Payment for the majority of Medicare and Medicaid services is based on a prospectively determined fixed price, according to a patient classification system, based on clinical and other diagnostic factors.

34. Contractual adjustments for the Medicare and Medicaid programs are recognized when the related patient service revenue is reported in the consolidated financial statements. These contractual adjustments represent the difference between established rates and the prospectively determined payments and amounts reimbursed. Amounts earned under these contractual arrangements are subject to review and final determination by Medicare and Medicaid intermediaries and other appropriate governmental authorities or their agents, and may be adjusted in future periods as settlements are determined.

35. The executive leadership structure at Mercy Health is not controlled by a church. The leadership is comprised of the following lay persons: John M. Starcher, Jr. (President and CEO of Mercy Health); Drew Banks (Chief Strategy Officer); Michael Bezney (Chief Legal Officer and General Counsel); Debbie Bloomfield (Chief Financial Officer); Randy Curnow, MD (Chief Medical Officer and President, Mercy Health Select); Joe Gage (Chief Human Resources Officer); Sr. Kathy Green (Chief Mission and Values Officer); Anton Decker, MBBCh (Chief Clinical Officer and President, Mercy Health Physicians); Dave Nowiski (CFO, Mercy Health Physicians and Mercy Health Select); Matt Love (SVP and Regional CFO); Todd Lupton (SVP and Regional CFO); Brian Smith (Chief Operating Officer); Imran Andrabi, MD (CEO, Mercy Health – Toledo Region Senior Vice President, Mercy Health); Bob Baxter (CEO, Mercy Health – Lima Region Senior Vice President, Mercy Health); Mike Garfield (CEO, Mercy Health – Cincinnati Region  Senior Vice President, Mercy Health); Steve Grinnell (CEO, Mercy Health – Paducah Region  Senior Vice President, Mercy Health); Paul Hiltz (CEO, Mercy Health – Springfield Region Senior Vice President, Mercy Health); Don Kline (CEO, Mercy Health – Youngstown Region, Senior Vice President, Mercy Health); and Ed Oley (CEO, Mercy Health – Lorain Region Senior Vice President, Mercy Health).

36.     The Mercy Health Corporate Board of Trustees is not controlled by a church.  The Mercy Health Corporate Board of Trustees provides overall system direction, approves appointments to regional boards, and appoints and evaluates the system CEO.  It approves system and regional strategic and financial plans. It also is responsible for mergers, acquisitions, divestitures and dissolutions of subsidiaries; approves debt and expenditures in excess of the amount authorized for the CEO; and annually appoints an external auditing firm.  The Mercy Health Corporate Board of Trustees is comprised of the following:

- Katherine A. Arbuckle, CPA;
- Michael D. Connelly, M.A., J.D., FACHE;
- Sister Doris Gottemoeller, RSM;
- Lawrence L. Grypp;
- George J. Isham, MD, MS;
- Catherine A. Jacobson, FHFMA, C.P.A.;
- Denise Koo, MD, MPH;
- David C. Leach, M.D.;
- Joel A. Levine, J.D.;
- Iliana A. Mora;
- Sister Jean Orsuto, HM, R.N., M.S.N.;
- Leonard M. Randolph, Jr., M.D., Vice Chair, Board of Trustees;
- Donald Rohling;
- Fr. Myles N. Sheenan, SJ;
- Sister Carol Anne Smith, HM;
- Sister Mary Stanton, RSM;
- John M. Starcher; and
- Katherine W. Vestal, R.N., Ph.D., FAAN, FACHE, Chair, Board of Trustees.

37.     The Mercy Health Corporate Board of Trustees is mostly comprised individuals outside the church.

38.     Mercy Health is not, and does not claim to be, a church.

39.     Under Section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan must be both established and maintained by a church or by a convention or association of churches to qualify for the church plan exemption.

40.     The Plan was established by the Company or its predecessors, not by a church or convention or association of churches.

41.     The Plan is maintained by the Company, not by a church or convention or association of churches.

42.     The principal purpose of Mercy Health is to provide healthcare services, not to operate a pension system.

43.     Since the Plan is maintained by a healthcare company, the Plan is not maintained by "an organization … the principal purpose of which is the administration or funding of a plan or program for the provision of retirement benefits…." 11 U.S.C. § 1002 (33)(C)(i).

44.     Moreover, the Plan is not maintained for employees of any church or convention or association of churches. It is maintained for employees of the Company -- a hospital system.

**The Plan Is Not A Church Plan**

45.     Under section 3(33) of ERISA, 29 U.S.C. 1002(33), only the following two types of plans may qualify as a Church Plan:

- _First_, under Section 3(33)(A) of ERISA, 29 U.S.C. 1002(33)(A), a plan established and maintained by a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of Section 3(33)(B) of ERISA, 29 U.S.C. 1002(33)(B); and

- _Second_, under Section 3(33)(C)(i) of ERISA, 29 U.S.C. 1002(33)(C)(i), a plan established by a church or by a convention or association of churches that is maintained by an organization, the principal purpose or function of which is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or

11

association of churches, can qualify under certain circumstances and subject to the restrictions of Section 3(33)(B) of ERISA, 29 U.S.C. 1002(33)(B). Both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as a "Church Plan."

46.     Although other portions of ERISA section 3(33)(C) address, among other matters, who can be participants in a Church Plan — in other words, which employees can be in a Church Plan, these other portions of ERISA Section 3(33)(C) do not add any other type of plan that can be a Church Plan. 29 U.S.C. 1002(33)(C). The only two types of plans that can qualify as a Church Plan are those described in ERISA Section 3(33)(A) and in section 3(33)(C)(i), 29 U.S.C. 3(33)(A) and (C)(i). The Plan here does not qualify as a Church Plan under either ERISA Section 3(33)(A) or Section 3(33)(C)(i), 29 U.S.C. 3(33)(A) or (C)(i).

47.     First, under ERISA Section 3(33)(A), a Church Plan is "a plan established and maintained for its employees by a church or by a convention or association of churches which is exempt from tax under Section 501 of title 26." ERISA 3(33)(A), 29 U.S.C. 1002(33)(A).

48.     The Plan at issue here is not and has never been a "Church Plan" as defined in ERISA Section 3(33)(A), 29 U.S.C. 1002(33)(A), because the Plan was established and maintained by Mercy Health for its own employees. Because Mercy Health is not a church or a convention or association of churches, nor does it claim to be, the Plan was not "established and maintained by" a church or a convention or association of churches and was not maintained for employees of a church or a convention or association of churches. That is the end of the inquiry under ERISA Section 3(33)(A), 29 U.S.C. 1002(33)(A).

49.     Second, under ERISA Section 3(33)(C)(i), a "Church Plan" also includes a plan "established" by a church or by a convention or association of churches that is "maintained by an

organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA 3(33)(C)(i), 29 U.S.C. 1002(33)(C)(i).

50.     The Plan here is not "Church Plan" as defined in ERISA Section 3(33)(C)(i), 29 U.S.C. 1002(33)(C)(i), because the Plan was not "established" by a church or a convention or association of churches. Moreover, the Plan here does not qualify as a "Church Plan" under Section 3(33)(C)(i) because it was maintained by Mercy Health, whose principal purpose or function is not the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. Instead, the principal purpose of Mercy Health is to own and operate hospitals and ancillary healthcare entities. This ends any argument that the Plan could be a "Church Plan" under ERISA Section 3(33)(C)(i), 29 U.S.C. 1002(33)(C)(i).

51.     However, even if the Plan here had been "established" by a church or even if the principal purpose or function of Mercy Health was the administration or funding of the Plan (instead of running a hospital conglomerate), the Plan still would not qualify as a "Church Plan" under ERISA Section 3(33)(C)(i), 29 U.S.C. 1002(33)(C)(i), because the principal purpose of the Plan is not to provide retirement or welfare benefits to employees of a church or convention or association of churches. The thousands of participants in the Plan work for Mercy Health, a non-profit hospital conglomerate. Mercy Health is not a church or a convention or association of churches, and its employees are not employees of a church or a convention or association of churches.

52.     Under ERISA Section 3(33)(C)(ii), 29 U.S.C. 1002(33)(C)(ii), however, an employee of a tax exempt organization that is controlled by or associated with a church or a convention or

association of churches also may be considered an employee of a church.   But the Plan here also fails this part of the definition, because Mercy Health is not controlled by or associated with a church or a convention or association of churches within the meaning of ERISA.

53.     Though this fact may be disputed by Mercy Health, Mercy Health is not an entity that is controlled by a church or a convention or association of churches.  Mercy Health is not owned by the Catholic Church and does not receive funding from the Catholic Church.   Moreover, although the lack of funding of, and control over, the operations of Mercy Health precludes a finding that the Catholic Church controlled Mercy Health within the meaning of ERISA, Mercy Health's governance structure further demonstrates a lack of control.

54.     Moreover, Mercy Health is not "associated with" a church or convention or association of churches.   Under ERISA Section 3(33)(C)(iv), 29 U.S.C. 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convections with that church or convention or association of churches." Mercy Health does not share common religious bonds and convictions with a church or a convention or association of churches.  Instead, it purports to share only some religious convictions with the Catholic Church, while deliberately choosing to distance itself from, and/or deny, other religious convictions of the Catholic Church, when it is in its economic interest to do so, such as when it hires employees, invests in various business enterprises, encourages divergent and contrary spiritual support to its patients, and performs or authorizes medical procedures forbidden by the Catholic Church.

55.     The Catholic Church insists, for example, that the mystery of Christ be a part of every facet of a Catholic healthcare ministry, including by animating health care with the Gospel of Jesus Christ and seeing death as an opportunity to have communion with Christ.  Further, the Catholic

Church requires that its healthcare employees, as a condition of employment, agree that their services be animated by the Gospel of Jesus Christ.  Upon information and belief, Mercy Health, however, specifically chooses not to make animation of healthcare through the Gospel of Jesus Christ a condition of employment and informs prospective employees that Catholic faith is not a factor in the hiring process.  Indeed, Mercy Health recruits and hires from the greatest employment pool possible—one not restricted by any faith—in an attempt to hire the most qualified healthcare workers.

**The Plan**

56.     Mercy Health has several defined benefit pension plans covering the majority of employees who qualify as to age and length of service.  Mercy Health funds actuarially determined pension amounts in accordance with a long-term funding policy to ensure the defined benefit pension plans maintain adequate funding over time.  In addition, Mercy Health has several defined contribution plans.

57.     The Plan at issue here is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

58.     The Plan at issue here is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

59.     Mercy Health is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it has exercised authority or control respecting management or disposition of Plan assets, or has had discretionary authority or discretionary responsibility in the administration of the Plan.

60.     Mercy Health, acting through its Board of Trustees, officers, and employees, is responsible for all of the acts alleged herein.  Additionally, the Company has also been a party-in-

interest under ERISA § 3(14), 29 U.S.C. § 1002(14), both because it is a fiduciary and because it is an employer whose employees are covered by the Plan.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the class (the "Class") defined as follows: "All participants in and beneficiaries of the Plan. Excluded from the Class are Defendants and any individuals who are subsequently to be determined to be fiduciaries of the Plan."

62.     The members of the Class are so numerous that joinder of all members is impractical. Upon information and belief, the Class includes thousands of persons.

63.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

64.     There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

- Whether the Plan is covered by ERISA;

- Whether the Plan Administrator failed to comply with ERISA's reporting and disclosure provisions;

- Whether the Plan fiduciaries failed to establish a funding policy and fund the Plan in compliance with ERISA; and

- Whether the Plan fiduciaries breached their fiduciary duties in failing to comply with the provisions of ERISA set forth above.

65. Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action, and anticipates no difficulty in the management of this litigation as a class action.

66. This action may be properly certified under either subsection of Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

67. In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

68. In the alternative, certification under Rule 23(b)(3) is also appropriate. A class action is superior to other available methods for the fair and efficient adjudication of the controversy within the meaning of Rule 23(b) and in consideration of the matters set forth in Rule 23(b)(3)(A)-(D). Because of the amount of the individual Class members' claims, relative to the complexity of the litigation and the financial resources of Defendants, few, if any, members of the Class would seek legal redress individually for the wrongs complained of herein. The maintenance of separate actions

would place a substantial and unnecessary burden on the courts, and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members. Absent a class action, Class members will continue to suffer damages, and Defendants' misconduct will proceed without remedy.

## FIRST CAUSE OF ACTION

### Declaratory and Equitable Relief
### (Declaratory Judgement Act and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

69. Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

70. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

71. Pursuant to this provision, 28 U.S.C. § 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Plan is not a "church plan" within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus subject to the provisions of Title I and Title IV of ERISA.

72. Plaintiff further seeks orders directing all Defendants to bring the Plan into compliance with ERISA, including the reporting and funding requirements of ERISA, 29 U.S.C. §§ 1021, 1023, 1082, 1102, and 1104, and by remedying the additional violations set forth below.

73. Additionally, Plaintiff seeks an order that Mercy Health make all contributions to the Plan as necessary to remedy the Plan's funding shortfall.

## SECOND CLAIM FOR RELIEF

### Violation of Reporting and Disclosure Provisions

**(ERISA §§ 101-104, 502(a)(1)(A), (a)(3), 29 U.S.C. §§ 1021-1024, 1132(a)(1)(A), (a)(3))**

74.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

75.    ERISA § 502(a)(1)(A), 29 U.S.C. 1132(a)(1)(A), permits a plan participant to bring a suit for penalties when a defendant violates the recordkeeping obligations set forth in ERISA.

76.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

77.    Under ERISA § 103, 29 U.S.C. § 1023, employee benefit plans are required to file an annual report with the Secretary of Labor. This report, submitted via Form 5500, must include certain specified information about the plan's finances, participants, and administration.

78.    Defendants failed to file an annual report concerning the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or a Form 5500 (and associated schedules and attachments) which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

79.    Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments.

80.    Under ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), employers maintaining employee benefit plans are required to issue a notice to beneficiaries and participants whenever the plan fails to make a required installment or other payment required to meet the minimum funding standards under ERISA.

81.    Mercy Health has failed to furnish Plaintiff, or any member of the Class, with a

Notice with respect to the Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing

them that it failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082.

82. Under ERISA § 101(f), 29 U.S.C. § 1021(f), administrators of defined benefit plans

are required to provide annual plan funding notices to all participants and beneficiaries of such

defined benefit plans.

83. At no time has the Committee furnished Plaintiff, or any member of the Class, with a

Funding Notice with respect to the Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

84. As the Administrator of the Plan, the Committee has violated ERISA § 101(f), 29

U.S.C. § 1021(f), by failing to provide each participant and beneficiary of the Plan with the Funding

Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f), and as such, the Committee may be

required by the Court to pay Plaintiff and each Class member up to $110 per day (as permitted by 29

C.F.R. § 2575.502(c)(3)) for each day that the Committee has failed to provide Plaintiff and each

Class member with the Funding Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f).

### THIRD CLAIM FOR RELIEF

**Failure to Provide Minimum Funding**
**(ERISA §§ 302 and 502(a)(3), 29 U.S.C. §§ 1082, 1132(a)(3))**

85. Plaintiff re-alleges and incorporates herein by reference all prior allegations in this

Complaint.

86. ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined

benefit plans that require employers to make minimum contributions to their plans so that each plan

will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay

benefits out of its general assets.

87. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit

to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the

terms of a plan.

88.     As the employer maintaining the Plan, Mercy Health was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with ERISA's requirements.

89.     Mercy Health has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

90.     By failing to make the required contributions to the Plan, Mercy Health has violated ERISA § 302, 29 U.S.C. § 1082.

91.     As a result of the failure of Mercy Health to fund the Plan in accordance with ERISA's minimum funding standards, Plaintiff faces a substantial risk of his pension being lost or severely reduced.

## FOURTH CLAIM FOR RELIEF

### Failure to Establish the Plan Pursuant to a Written Instrument Under ERISA
### (ERISA §§ 402, 502(a)(3), 29 U.S.C. §§ 1102, 1132(a)(2))

92.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

93.     ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will, among other things, "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

94.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

95.     The Plan has not been established pursuant to a written instrument meeting the

requirements of ERISA § 402, 29 U.S.C. § 1102.

96.     As Mercy Health has been responsible for maintaining the Plan, and has amendment power over the Plan, it violated § 402, 29 U.S.C. § 1102, by failing to promulgate written instruments in compliance with these sections to govern the Plan's operation and administration.

### FIFTH CLAIM FOR RELIEF

**Breach of Fiduciary Duty**
**(ERISA §§ 404, 409, 502(a)(2), 29 U.S.C. §§ 1104, 1109, 1132(a)(2))**

97.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

98.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, and defraying reasonable expenses of administering the plan, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

99.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan, and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA, shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits the fiduciary made through the use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

100.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

101.     As a fiduciary of the Plan, Defendants had the duty to comply with and enforce the

provisions of ERISA alleged above.

102.    Defendants have not complied with and/or enforced any of the provisions of ERISA set forth above with respect to the Plan.

103.    By failing to enforce the provisions of ERISA set forth above, Defendants have breached their fiduciary duties.

104.    The failure of Defendants to create and enforce adequate funding for the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon. This failure has benefitted Mercy Health by providing it the use of money that it should have paid to the Plan for its general business purposes.

105.    Plaintiff is entitled to recover those losses on behalf of the Plan.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgement be entered against Defendants on all claims and requests that the Court award the following relief:

A.    Certifying this action as a class pursuant to FED. R. CIV. P. 23;

B.    Declaring that the Plan is an employee benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition of ERISA § 3(33), 29 U.S.C. § 1002(33);

C.    Ordering Defendants to bring the Plan into compliance with ERISA, including, but not limited to, requiring Defendants to fund the Plan in accordance with ERISA's funding requirements, disclose required information to the Plan's participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Title I of ERISA;

D.    Requiring Defendants to make the Plan whole for all contributions that should have

been made pursuant to ERISA funding standards, and for interest and investment income on such contributions, and requiring Defendants to disgorge any profits accumulated as a result of their fiduciary breaches;

E.      Granting a preliminary and permanent injunction removing Defendants as Plan fiduciaries, and appointing one or more independent fiduciaries to hold the Plan assets in trust, to manage and administer the Plan and its assets, and to enforce the terms of ERISA;

F.      Requiring the Plan to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to inform Plaintiff and each Class member of its failure to fund the Plan in accordance with ERISA's requirements;

G.      Requiring Mercy Health to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide Plaintiff and each Class member with a Funding Notice;

H.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Plan;

I.      Awarding, declaring, or otherwise providing Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper, and such appropriate equitable relief as the Court may order, including an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy; and

J.      Awarding to Plaintiff's counsel attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

*/s/ Mark W. Napier*
Mark W. Napier (0019700)
**FREKING MYERS & REUL LLC**
525 Vine Street, 6th Floor
Cincinnati, OH  45202
PH: 513/721-1975 – FX: 513/651-2570
*mnapier@fmr.law*


Thomas J. McKenna
Gregory M. Egleston
**GAINEY McKENNA & EGESTON**
440 Park Avenue South, 5th Floor
New York, New York 10016
PH: 212/983-1300 – FX: 212/983-0383
*tjmckenna@gme-law.com*
*gegleston@gme-aw.com*

**Counsel for Plaintiff**


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

*/s/ Mark W. Napier*
Mark W. Napier


Dated: June 23, 2016